Nathan Brown (SBN: 033482)
Nathan.Brown@BrownPatentLaw.com
BROWN PATENT LAW
1500 N 7th Way Suite 203
Scottsdale, AZ 85260
Telephone: (602) 529-3474

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the putative class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Darren MacDonald**, individually on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>**Brian Gubernick, PLLC**, and **Brian Gubernick**,<br><br>　　　　　Defendants. | Case No. 2:20-cv-00138-SMB<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Darren MacDonald ("Plaintiff" or "MacDonald") brings this Class Action Complaint and Demand for Jury Trial against Brian Gubernick, PLLC d/b/a Homehelper Consultants ("HHC"), and Brian Gubernick ("Gubernick"), to stop Defendants from directing real estate agents to violate the Telephone Consumer Protection Act ("TCPA") by making unsolicited, autodialed calls to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by Defendants' actions. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1.      Plaintiff MacDonald is an Arizona resident.

2.      Defendant Brian Gubernick, PLLC is an Arizona incorporated and headquartered company doing business as Homehelper Consultants.  HHC conducts business throughout this District and the United States.

3.      Defendant Brian Gubernick is an Arizona resident that conducts business throughout this District and the United States.  Gubernick controls HHC.

**JURISDICTION AND VENUE**

4.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in and/or do significant business in Arizona, and because the wrongful conduct giving rise to this case was directed by some or all of the Defendants from Arizona and to the Plaintiff in Arizona at his Arizona area code cellular phone number.

**COMMON ALLEGATIONS**

**HHC Directs and Trains Agents to Cold Call Consumers
and Provide them Leads and a Dialing Platform to do so**

6.      Keller Williams is an international real estate brokerage comprised of real estate franchises and real estate teams.

7.      HHC operates a Keller Williams "Expansion Team."

8.      In real estate terms, "Expansion … is when a real estate team owner, who is part of a brokerage, expands his or her business outside of the local market. Think of

expansion as a team without geographic borders."[1]  Gary Keller, Keller Williams's CEO, was the first to conceive of expansion in the real estate industry, which he deemed "a game-changing" initiative because it allowed top Keller Williams agents to expand their operations nationwide.

9.     HHC's Keller Williams Expansion Team currently operates in Arizona, Michigan, Nevada, Oregon, and Washington.

10.     HHC recruits and directly contracts with real estate agents in each of the states in which it jointly operates its Expansion Team.

11.     Real estate agents that contract with HHC to be a part of its Keller Williams Expansion Team must also be affiliated with a local Keller Williams franchise in the market area in which they work.

12.     In HHC's job postings, which are prepared by Gubernick, HHC makes clear that they "***are seeking Phone Animals***" – *i.e.*, agents with a "willingness and ability to spend 80% to 90% of [the] workday on the phone" – and specifically identify the following skills:  "Ability to use or quickly learn Google Apps/Calendar, MOJO (SaaS phone and dialing technology)."[2]  In fact, the job posting makes clear that Gubernick monitors and evaluates each agents' productivity.

13.     ████████████████████████████████████████
████████████████████████████████████████████████
████████

14.     The Mojo Dialer system includes a "Power Dialer," i.e., a dialer that can automatically call an entire list of leads.

15.     ██████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

---

[1] https://www.inman.com/2018/08/20/why-virtual-brokerages-will-make-real-estate-expansion-teams-unstoppable/
[2] https://www.linkedin.com/jobs/view/real-estate-inside-sales-at-homehelper-consultants-13411907/

███████████████████████████████████████

████████

16.     The Mojo Dialer system can import lists of leads, with associated phone numbers. The system can then generate sequential numbers and store these sequential numbers in a database, to indicate the automatic dialing order for leads.

17.     For example, the following screenshots (on the next page) from Mojo demos show sequential numbers generated by the Mojo system and stored in its database, to indicate the call order for leads. The second image illustrates how the system can sequentially order hundreds of thousands of leads.



18.     The Mojo system can then automatically call through the list in the stored sequential order, e.g., from the last call dialed or from "top to bottom."  Mojo states: "You can easily call ALL leads in your list/group, from top to bottom, call ONLY from where you left off, including any new leads (ignoring previously dialed leads until you reach the end of the list), and even used custom dialing filters to slice and dice your list, based on many different call driven data points- very useful for complete list saturation."[3]



19.     ██████████████████████████████████████
████████████████████████████████████████

20.     ██████████████████████████████████████
████████████████

21.     ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████

---

[3] https://lb11.mojosells.com/support_site/knowledge_library

1 ████████████████████████████████████

2 ████████████████████████████████████████

3 █████████████████████████████████████████

4 ████████████████████████████████████████

5 ██████████████████████████████████████

6 ████████████

7    22.   ████████████████████████████████████

8 ██████████████████████████████████████

9 ████████████████████████████████████

10 ████████████████████████████████████

11 █████████████████████████████████████

12    23.   ████████████████████████████████████

13 █████████████████████████████████████████

14 ████████████████████████████████

15    24.   ████████████████████████████████████

16 ██████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████

19 ████████████████████████████████████████

20 ████████████

21    25.    As Jason Abrams (a former employee of Gubernick) described HHC's

22 initial training program to an audience full of Keller Williams executives and realtors

23 during a national Keller Williams event:  "You've been onboarded, 2-week 10-day

24 process of watching amazing videos, I'm in all of them, they are great. They are 20

25 minutes a piece with an assessment at the end…then they hit the phone. On a daily basis

26 we are monitoring through BoomTown to make sure everyone is getting

27

28

1  contacted…Truthfully, the accountability comes from the Hub. We are checking it every
2  day. We are auditing our agents' BoomTown accounts every single day."[4]
3  ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓
6  ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7  ▓▓▓▓▓▓▓▓▓▓

8      28.   HHC's views on cold calling are best summed up by Gubernick, who
9  explained in a recent video for agents:  "I would tell you in terms of lead generation as
10 you scale up, ***you've got to use the phone as your weapon of choice***. What can you be
11 calling on? For us, it was anything from expired listings, to circle prospecting, to just-
12 sold, to circle prospecting, open house, non-owner occupieds, divorce lists, or a probate
13 list. To me it didn't really matter, I just wanted contacts and that's really what it's about,
14 the number of contacts you can generate."[5]

15     29.   The cold calling practices HHC requires of its agents are consistent with the
16 direction to all Keller Williams team leaders (like Gubernick and Abrams) and agents
17 from Keller Williams's CEO Gary Keller and from other parts of Keller Williams's
18 organization, including from Abrams, who is Keller Williams's Vice President of
19 Industry and a Keller Williams national trainer (in addition to his role in HHC and AI).

20     30.   For example, in his books and other materials, Keller instructs agents that
21 they must approach lead generation – which he specifically describes to include cold
22 calling consumers using calling software and services– in a systematic way, writing:

23     • "Peak performance in sales requires you to have a systematic marketing-
24       based Lead-Generation Model," and "success in the lead-generation game

[4] https://www.youtube.com/watch?v=l39M9hZPKrs&t=7s
[5] https://www.youtube.com/watch?v=vVKu4nXImjI&t=34s

SECOND AMENDED CLASS ACTION COMPLAINT
-8-

is in the numbers, so you simply can't overdo it. Again, let me reiterate that you can never have too many leads."

- "The issue of leads should always be at the forefront of your business consciousness."

- "No matter how you slice it, lead generation will almost always come down to a game of numbers. For effective lead generation, you need to be systematic."

31. Consistent with this, Keller has been quoted in Keller Williams videos promoting precisely the lead generation system HHC and AI requires of their Keller Williams Expansion Team agents: "We want every agent to wake up in the morning and put in 3-4 hours of lead-generation time before noon."[6]

32. Keller has even described obtaining lists of leads and telemarketing to them as the best means of expanding from a single agent operation to a team.

33. Similarly, Keller Williams provides training across its organization that is substantively the same as the training HHC in turn provides to its agents. This includes courses taught by Abrams such as "Expand Your Market and Your Business," in which "Abrams discusses the different pillars of his business and how he prospects nationwide," a course called "Mega Agent Expansion"[7] taught by both Abrams and Gubernick, and courses on how to work the Mojo Dialer, including "Mojo Walkthrough" and "Mojo Mastery: Master Follow Up Prospecting." It also includes individualized coaching programs intended to reinforce "The 3 Hour Habit" (*i.e.*, cold calling), including "Practicing scripts and calling FSBOs or Expired Listings," which Keller Williams describes as "the most important part of the class."[8]

---

[6] https://www.youtube.com/watch?time_continue=1&v=8yuk1tslcck
[7] http://kwrievents.kw.com/ehome/318820/702606
[8] https://www.kwredlabel.com/kwucourses/leadgen36123/student/KWU-LEAD-GEN-STU.html

**PLAINTIFF MACDONALD'S ALLEGATIONS**

34.     On January 4, 2018, Plaintiff MacDonald received a call to his cellular phone number from an HHC agent, Christine Hotchkin, using the phone number 503-498-6590.

35.     The call was made using the Mojo Dialer ████████████████████ ███████

36.     When Plaintiff answered the call, he noticed that it began with a pause, which typically indicates the use of an autodialer.

37.     Hotchkin was calling to offer Defendants' real estate brokerage services to Plaintiff.

38.     Plaintiff told the agent he was not interested and that he wanted his phone number removed from her list.

39.     Plaintiff never consented to receiving solicitation calls from any of the Defendants.

40.     Plaintiff was not looking to sell his home and was not otherwise seeking real estate brokerage services.

41.     The unauthorized telephone call made by Defendants, as alleged herein, has harmed Plaintiff MacDonald in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

42.     Seeking redress for these injuries, Plaintiff MacDonald, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited autodialed text messages to cellular telephones.

## CLASS ALLEGATIONS
### Class Treatment Is Appropriate for Plaintiff's TCPA Claim

43.     Plaintiff MacDonald bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> All persons in the United States who from four years prior to the filing of this action through class certification (1) an HHC agent called, (2) on the person's cellular phone number, (3) using the Mojo Dialer, (4) based on a lead provided by HHC to the agent.

44.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which any Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff MacDonald anticipates the need to amend the Class definitions following appropriate discovery.

45.     **Numerosity:** On information and belief, there are thousands of members of the Class such that joinder of all members is impracticable.

46.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff MacDonald and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.  whether HHC agents used an automatic telephone dialing system to place phone calls to Plaintiff and the members of the Class;

    b.  whether the agents made those calls without prior express written consent;

    c.  whether the agents made those calls at Gubernick's direction;

SECOND AMENDED CLASS ACTION COMPLAINT

-11-

d.  whether the agents made those calls at HHC's direction;

e.  whether HHC is vicariously liable for the agents' calls; and

f.  whether Defendants' conduct was willful or knowing, entitling the class to treble damages.

47.  **Adequate Representation**: Plaintiff MacDonald will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff MacDonald has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff MacDonald and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff MacDonald nor his counsel have any interests adverse to the Class.

48.  **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, **thereby** requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald and the Class and against all Defendants)**

49.    Plaintiff MacDonald repeats and realleges the above paragraphs of this Complaint and incorporates them by reference.

50.    Defendants' agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to the Plaintiff and the other members of the Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

51.    These solicitation telephone calls were made en masse without the prior express written consent of the Plaintiff and the other members of the Class.

52.    Defendant Gubernick personally directed the agents' calls.

53.    Defendant HHC controlled, apparently authorized, and/or ratified the agents' calls.

54.    Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, the Plaintiff and the other members of the Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff MacDonald, individually and on behalf of the Class, pray for the following relief:

55.    An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff MacDonald as the representative of the Class; and appointing his attorneys as Class Counsel;

56.    An award of actual and/or statutory damages and costs;

57.    An order declaring that Defendants' actions, as set out above, violate the TCPA;

SECOND AMENDED CLASS ACTION COMPLAINT

-13-

58.   An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

59.   Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff MacDonald requests a jury trial.

Dated: November 9, 2021         Respectfully submitted,

By: /s/ *Jonas Jacobson*

Jonas Jacobson (admitted *pro hac vice*)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd.
Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066

Rachel E. Kaufman (admitted *pro hac vice*)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff MacDonald*
*and the putative Class*

Nathan Brown
Nathan.Brown@BrownPatentLaw.com
BROWN PATENT LAW
1500 N 7th Way Suite 203
Scottsdale, AZ 85260
Telephone: (602) 529-3474

*Local Counsel for Plaintiff MacDonald*
*and the putative Class*

---

SECOND AMENDED CLASS ACTION COMPLAINT
-14-